**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| VICTOR BRISENO, and<br>PAULA BRISENO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08-74 L<br><br>Judge Lynn J. Bush |

**UNITED STATES' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**MOTION** . . . . . . . . . . 1

**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS** . . . . . . .1

I. Factual Background . . . . . . . . . . 1

II. Procedural Background . . . . . . . . . . 2

III. Applicable Legal Standards . . . . . . . . . . 3

A. Standard for Deciding a Motion to Dismiss for Lack of Jurisdiction . . . . . . . . . . 3

B. Standard for Deciding a Motion to Dismiss Under Rule 12(b)(6) . . . . . . . . . . 4

IV. Analysis . . . . . . . . . . 5

A. Plaintiff's Action Consists of a Tort Claim Over Which This Court Lacks Jurisdiction . . . . . . . . . . 5

B. Plaintiffs Have Failed to State a Claim Over Which Relief Can Be Granted . . . . . . . . . . 12

V. Conclusion . . . . . . . . . . 14

## TABLE OF AUTHORITIES

CASES

Algonac Mfg. Co. v. United States
192 Ct. Cl. 649, 428 F.2d 1241 (1970) . . . . . . . . . . 7

Bell Atl. Corp. v. Twombly
127 S. Ct. 1955 (2007) . . . . . . . . . . 4, 13-14

Boise Cascade Corp. v. United States
296 F.3d 1339 (Fed. Cir. 2002) . . . . . . . . . . 12

Chapman Law Firm Co. v. Greenleaf Constr. Co.
490 F.3d 934 (Fed. Cir. 2007) . . . . . . . . . . 4

Conti v. United States
291 F.3d 1334 (Fed. Cir. 2002) . . . . . . . . . . 4

Drury v. United States
52 Fed. Cl. 402 (2002) . . . . . . . . . . 6, 10-12

Esch v. United States
77 Fed. Cl. 582 (2007) . . . . . . . . . . 4

Eyherabide v. United States
170 Ct. Cl. 598, 345 F.2d 565 (1965) . . . . . . . . . . 10

Furash & Co. v. United States
252 F.3d 1336 (Fed. Cir. 2001) . . . . . . . . . . 5

Independence Park Apartments v. United States
465 F.3d 1308 (Fed. Cir. 2006) . . . . . . . . . . 7

Jentoft v. United States
450 F.3d 1342 (Fed. Cir. 2006) . . . . . . . . . . 6

John Horstmann Co. v. United States
257 U.S. 138 (1921) . . . . . . . . . . 9

Keene Corp. v. United States
508 U.S. 200 (1993) . . . . . . . . . . 6

Loretto v. Teleprompter Manhattan CATV Corp.
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

May v. United States
80 Fed. Cl. 442 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

Moden v. United States
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

Poorbaugh v. United States
27 Fed. Cl. 628 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reynolds v. Army & Air Force Exch. Serv.
846 F. 2d 747 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

Ridge Line, Inc. v. United States
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9

Scheuer v. Rhodes
416 U. S. 232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

Sommers Oil Co. v. United States
241 F.3d 1375 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Steward v. United States
80 Fed. Cl. 540 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 14

Taylor v. United States
303 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Thomson v. Gaskill
315 U.S. 442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Trafny v. United States
503 F.3d 1339 (Fed. Cir. 2007)(per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Turner v. United States
901 F.2d 1093 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Vaizburd v. United States
384 F.3d 1278 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

STATUTES

**Federal Statutes**

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

**State Statutes**

N.M. Stat. Ann. § 30-14-1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

RULES

RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RCFC 12(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RCFC 9(h)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## MOTION

Defendant United States of America respectfully moves the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), to dismiss the Complaint that Plaintiffs Victor and Paula Briseno filed in this matter. Plaintiffs' Complaint asserts claims over which this Court does not have jurisdiction. Alternatively, to the extent that the Court may find that it does have jurisdiction over this action, the allegations contained in Plaintiffs' Complaint fail to state a claim for which relief may be granted. A memorandum in support of this motion follows.

## MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS

### I. FACTUAL BACKGROUND.

Plaintiffs own property in a rural area located at or near Forest Road 49, Zuni Canyon Road, near Grants, New Mexico. *See* Complaint ¶ 3, at 1, filed February 4, 2008 (Doc. 1).[1/] Plaintiffs' property is adjacent to the Cibola National Forest. *See id.* ¶¶ 9-12, at 2. The United States Forest Service has marked the boundary between Plaintiffs' property and the Cibola National Forest with orange carsonite property-boundary markers. *See id.* ¶ 12, at 2.

On or about June 13, 2003, the Forest Service's Mount Taylor Incident "Hotshot Crew"[2/] conducted hazardous-fuels tree thinning in the Zuni Mountains, within the Cibola National

---

[1/]For the purposes of this motion, the United States accepts as true the factual allegations contained in the Plaintiffs' Complaint. *See infra* Part III. The United States reserves its right to challenge all of these allegations in subsequent proceedings

[2/]The Forest Service's "Hotshot" crews are diverse teams of multi-skilled firefighting professionals. The Hotshots specialize in wildfire suppression, but the crews "also work to meet resource goals on their home units through thinning, prescribed fire implementation, habitat improvement or trail construction projects." U.S. Forest Service Hotshots Home Page, http://www.fs.fed.us/fire/people/hotshots/IHC_hist.html.

Forest and adjacent to the La Jara Subdivision in Grants.[3] *See id.* ¶¶ 9-10, at 2. In performing its work, the Hotshot Crew inadvertently crossed over onto the Plaintiffs' property, and cut down approximately 139 trees. *See id.* ¶ 13, at 2. These trees ranged in height from three feet to thirty-seven feet. *See id.* Plaintiffs had not granted the Hotshot Crew permission to cut down trees on their property. *See id.* ¶ 14, at 2.

## II. <u>PROCEDURAL BACKGROUND</u>.

In July 2004, Plaintiffs filed a Tort Claim with the United States Department of Agriculture ("USDA") alleging that the Hotshot crew's cutting resulted in $19,705.00 in damages. *See id.* ¶ 5, at 2; Def's. Ex. 2, Claim for Damage, Injury, or Death (dated July 16, 2004)("Tort Claim"). Plaintiffs' Tort Claim describes the property at issue as "139 Ponderosa Pines cut down on approximately 3 acres of land located on [F]orest Rd. 49 just below La Jara Subdivision." *See* Def's. Ex. 2, Tort Claim at 1.

On December 20, 2004, USDA Assistant Regional Attorney Mary Ann Joca responded to Plaintiffs' Tort Claim. *See* Complaint ¶ 6, at 2; Def's. Ex. 3, Letter from Mary Ann Joca to Victor and Paula Briseno (dated Dec. 20, 2004)("Dec. 20 Letter"). Ms. Joca advised that the documentation the Plaintiffs submitted to the USDA did not support an award in the amount Plaintiffs requested. *See* Def's. Ex. 3, Dec. 20 Letter at 1. Ms. Joca explained that "[t]he justification [Plaintiffs] have provided for the amount of damages [they] seek only relates to the actual replacement of the trees which were cut," and observed that "[t]his amount far exceeds the

---

[3] The Forest Service's project involved thinning "750 acres of small diameter (1"-12" diameter breast height) Ponderosa Pine, Piñon and Juniper for the purpose of reducing the risk of catastrophic fire in the wildland urban interface and improving forest health and vigor." *See* Def's. Ex. 1, Decision Memo: La Jara Fuels Reduction Project (dated Sept. 30, 2002).

fair market value of the approximately three acres involved." *Id.* Finally, Ms. Joca also confirmed that Forest Service employees cut and stacked the wood that was the subject of the Tort Claim, and left the wood in Plaintiffs' possession. *Id.*

On June 15, 2005, Plaintiffs responded to Ms. Joca's December 20, 2004 letter. *See* Complaint ¶ 7, at 2; Def's. Ex. 4, Letter from William R. Keeler to Mary Ann Joca (dated June 15, 2005)("June 15 Letter"). In the June 15 letter, Plaintiffs asserted that "the statute of limitations for this claim has not begun to run because a denial letter had not been sent to Mr. and Mrs. Briseno by [the USDA]." Def's. Ex. 4, June 15 Letter at 1. Plaintiffs advised that they were attempting to gather additional information "regarding far [sic] market value of the property before and after the incident in lieu of filing suit." *Id.*

Plaintiffs filed their Complaint on February 4, 2008. Plaintiffs attached to their Complaint a letter from Steven P. Neville to Plaintiffs' counsel that purports to be an appraisal of the value of the trees the Hotshot crew cut. *See* Pls.' Ex. A, Letter from Steven P. Neville to Mr. Bill Keeler (dated August 29, 2006)("Neville Letter"). Neville states that the total cost to replace the trees would be approximately $22,410.00. *See id.* at 1. Neville also concedes that, in performing his appraisal, he did "not estimate[] any affect on market value of the property." *Id.*

## III. <u>APPLICABLE LEGAL STANDARDS</u>.

### A. STANDARD FOR DECIDING A MOTION TO DISMISS FOR LACK OF JURISDICTION.

In considering a motion to dismiss a complaint for lack of jurisdiction over the subject matter, a court "must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff." *Steward v. United States*, 80 Fed. Cl. 540, 542 (2008)(citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Reynolds v. Army & Air Force Exch.*

*Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)). Nevertheless, the "[p]laintiff bears the burden of showing jurisdiction by a preponderance of the evidence." *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)(citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). If the court determines that it lacks jurisdiction, it must dismiss the action. *See* RCFC 12(h)(3).

**B. STANDARD FOR DECIDING A MOTION TO DISMISS UNDER RULE 12(b)(6).**

In considering a motion to dismiss a complaint for failure to state a claim under RCFC 12(b)(6), a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). Where it appears beyond doubt that a plaintiff cannot prove any set of facts that would entitled him to relief, a court may dismiss the cause of action. *See Conti v. United States*, 291 F.3d 1334, 1338 (Fed. Cir. 2002). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim. *See Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007)(citing *Scheuer*, 416 U.S. at 236). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(internal citation and quotations omitted); *Esch v. United States*, 77 Fed. Cl. 582, 587 (2007)(quoting *Bell Atl. Corp.*, 127 S. Ct. at 1964-65). *See also Steward*, 80 Fed. Cl. at 543 (explaining that "[t]he court must inquire whether the complaint meets the 'plausibility standard'"); *May v. United States*, 80 Fed. Cl. 442, 448 (2008)(emphasizing that plaintiff must establish her right to relief above the speculative level).

## IV. ANALYSIS.

Plaintiffs asserts claims over which this Court does not have jurisdiction. To the extent that the Court may find that it does have jurisdiction over this action, the allegations contained in Plaintiffs' Complaint fail to state a claim for which relief may be granted. Because Plaintiffs raise claims that are not cognizable in this Court, the Court should grant the United States' motion and dismiss the Plaintiffs' Complaint.

As a preliminary matter, the United States notes that Plaintiffs have not clearly identified the property interest they allege to have been taken. This Court's rules require that, in a suit for inverse condemnation, a plaintiff identify "the specific property interest that plaintiff contends has been taken by the United States." RCFC 9(h)(7). Plaintiffs' Complaint appears to assert a taking premised on a physical invasion of their land. *See* Complaint ¶ 18, at 3 ("The government intrusion onto Plaintiffs' property was a physical invasion of Plaintiffs' property and constitutes a possessory taking of Plaintiffs' property."). On the other hand, both Plaintiffs' Tort Claim and the Neville Letter that Plaintiffs submitted as Exhibit A to their Complaint suggest that the 139 cut trees represent the property interest which is the subject of this lawsuit. Nevertheless, as discussed below, regardless of the property interest that is the subject of this lawsuit, Plaintiffs Complaint must be dismissed for lack of jurisdiction or, alternatively, Plaintiffs' failure to state a compensable claim.

### A. PLAINTIFFS' ACTION CONSISTS OF A TORT CLAIM OVER WHICH THIS COURT LACKS JURISDICTION.

The Tucker Act, 28 U.S.C. § 1491, defines the jurisdiction of the United States Court of Federal Claims. *See Furash & Co. v. United States*, 252 F.3d 1336, 1338 (Fed. Cir. 2001). The Court of Federal Claims' jurisdictional grant includes:

> [J]urisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*.

28 U.S.C. § 1491(a)(1) (emphasis added). Consistent with the plain language of the Tucker Act, it is well-settled that the Court of Federal Claims does not have jurisdiction over tort claims. *See Keene Corp. v. United States*, 508 U.S. 200, 214 (1993); *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007)(per curiam); *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed. Cir. 2006).

As the party invoking the Court's jurisdiction, Plaintiffs have the burden to prove the allegations contained in their Complaint are not merely tortious and rise to the level of a taking. *See Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003)(noting that plaintiff "must establish that treatment under takings law, as opposed to tort law, is appropriate under the circumstances"). In determining whether Plaintiffs have satisfied their burden, "the essential inquiry is whether the injury to [Plaintiffs'] property is in the nature of a tortious invasion of [their] rights or 'rises to the magnitude' of an appropriation of some interest in [their] property for the use of the government." *Drury v. United States*, 52 Fed. Cl. 402, 403-04 (2002). Because the Plaintiffs' allegations sound in tort, and because the United States has not appropriated any interest in Plaintiffs' property, the Court should dismiss the Complaint for lack of jurisdiction under the Tucker Act.

Plaintiffs' characterization of their claim is consistent with the conclusion that the allegations in their Complaint sound in tort. First, Plaintiffs note in their Complaint that the administrative complaint they filed with the USDA was a "Tort Claim." Complaint ¶ 5, at 2. Second, Plaintiffs characterize the United States' action as an "uninvited tresspass." *Id.* ¶ 16, at

3. Moreover, both the factual allegations and the relief sought in Plaintiffs' current Complaint are identical to those contained in their administrative Tort Claim. *See* Def's. Ex. 2, Tort Claim §§ 8, 9, and 12a. The Tort Claim makes no reference to a taking of Plaintiffs' property.

Plaintiffs' understanding of their cause of action as one that sounds in tort is also emphasized in the relief they request. Rather than simply request to be compensated for the value of the property taken -- as the Fifth Amendment would require in a successful lawsuit for inverse condemnation -- Plaintiffs have also requested the Court grant them "compensation . . . for injury to resale and mortgageability, lost profits, loss of quiet enjoyment, loss of opportunity costs, loss of development benefits, loss of increase in value of the property and all other discomforts and annoyances suffered." Complaint at 4. Each of these is a remedy rooted in tort law, and beyond the scope of the Court's power to award compensation for a Fifth Amendment taking. *See Independence Park Apartments v. United States*, 465 F.3d 1308, 1311 (Fed. Cir. 2006)("[T]akings damages are limited to just compensation for what was taken and do not encompass consequential damages."); *Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649, 663, 428 F.2d 1241, 1249 (1970)(listing, *inter alia*, loss of salary, loss of a home, losses from damages to a manufacturing plant, losses from a forced sale of equipment and machinery, and loss of profits as tort damages that the court did not have power to award).

Because "not every 'invasion' of private property resulting from government activity amounts to an appropriation," *Ridge Line, Inc.*, 346 F.3d at 1355, the United States Court of Appeals for the Federal Circuit has identified two "hurdles" that a Plaintiffs "must clear" before their claims are entitled to treatment under takings law, *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005)(citing *Ridge Line, Inc.*, 346 F.3d at 1355). First, Plaintiffs must

demonstrate that the Forest Service intended to invade a protected property interest belonging to Plaintiffs, or that the alleged invasion "is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity." *Moden*, 404 F.3d at 1342 (citing *Ridge Line, Inc.*, 346 F.3d at 1355). Second, Plaintiffs must demonstrate that the alleged invasion appropriated a benefit to the United States at Plaintiffs' expense, "at least by preempting [Plaintiffs'] right to enjoy [their] property for an extended period of time, rather than merely by inflicting an injury that reduces the property's value." *Moden*, 404 F.3d at 1342 (citing *Ridge Line, Inc.*, 346 F.3d at 1355). Even assuming all of the allegations in Plaintiffs' Complaint as true, Plaintiffs have failed to establish either of these elements.

With respect to the first prong of the applicable analysis, Plaintiffs' Complaint does not allege that the Forest Service's Hotshot crew intentionally invaded Plaintiffs' property. Nor does the Complaint explain how Plaintiffs' alleged injury was the "direct, natural, or probable result" of the Forest Service's fuel-thinning activities within the Cibola National Forest, rather than "merely an incidental or consequential injury, perhaps compensable as a tort, caused, for example, by improvident conduct on the part of the government in managing its property." *Ridge Line, Inc.*, 346 F.3d at 1356.

Plaintiffs do not allege any Forest Service policy directing Hotshot crews to thin trees on private lands. Plaintiffs do not allege that the boundaries between their property and the National Forest were not clearly marked, such that it might be foreseeable that fuel-thinning crews could inadvertently wander onto and destroy private property. To the contrary, Plaintiffs emphasize that "[t]he property line was clearly marked by orange Forest Service property boundary markers." Complaint ¶ 12, at 2. Plaintiffs do not contend that the alleged invasion

was more than a solitary incident, *i.e.*, the result of an isolated error. In sum, Plaintiffs do not allege that the cutting of trees on private lands is a natural or foreseeable result of the Forest Service cutting trees within the National Forest. Indeed, there is no relationship between the two.[4]

Because the Plaintiffs have not carried their burden with respect to the first prong of the Federal Circuit's taking-tort inquiry, the Court need not go any further before dismissing Plaintiffs' Complaint for lack of jurisdiction. *See Moden*, 404 F.3d at 1346. Even if the Court were to find, however, that Plaintiffs had established this first element, the Court should still dismiss the Complaint, because Plaintiffs have failed to demonstrate that the United States' "interference with [their] property rights was substantial and frequent enough to rise to the level of a taking." *Ridge Line, Inc.*, 346 F.3d at 1357.

Plaintiffs' allegations are limited to a sole incident of a Hotshot crew cutting down 139 trees of varying heights on approximately three acres of land. Plaintiffs do not allege that this or comparable action has ever been repeated in the five years since the June 2003 incident that is the subject of their Complaint, or make any allegation that such an incident is "inevitably recurring." *Turner v. United States*, 901 F.2d 1093, 1095 (Fed. Cir. 1990)(noting that, in the context of allegations that flooding caused a taking of plaintiff's property, "a plaintiff must prove

[4] To the extent that Plaintiffs may argue that the first prong of the taking-tort inquiry is satisfied, because the Hotshot crew's activities actually caused the Plaintiffs' injury, such an argument is misplaced. "[P]roof of causation, while necessary, is not sufficient for liability in an inverse condemnation case." *Moden*, 404 F.3d at 1343 (citing *John Horstmann Co. v. United States*, 257 U.S. 138, 145-46 (1921)). In addition to proving that the Hotshot crew caused the alleged damage to Plaintiffs' trees, Plaintiffs must also prove "that the government should have predicted or foreseen the resulting injury." *Moden*, 404 F.3d at 1343.

that the land is subject to permanent or inevitably recurring floods").[5] Plaintiffs do not allege that the United States has appropriated the 139 trees for its own use or for the benefit of the government or the public. In fact, at Plaintiffs' request, the Forest Service cut and stacked the wood and moved the wood to the Plaintiffs' residence. *See* Def's. Ex. 3, Dec. 20 Letter at 1. Accordingly, the United States has not, at any time, asserted a permanent, or even a temporary, ownership interest in Plaintiffs' property. *See Drury*, 52 Fed. Cl. at 404 (holding that plaintiff's claims sounded in tort when, *inter alia*, none of the plaintiff's allegations "suggest[ed] that [the United States] has claimed a permanent or even temporary ownership interest in plaintiff's property"). Plaintiffs have failed entirely to allege that the United States appropriated their property, or that they were preempted from enjoying their property for any period of time. At most, Plaintiffs contend that the Hotshot crew's alleged invasion inflicted an injury by reducing the value of the trees that were cut. This allegation sounds in tort and is not compensable in this Court.[6] *See Moden*, 404 F.3d at 1342 (noting that a plaintiff "must show that the invasion

---

[5]Although frequently referenced in cases involving flooding, the "inevitably recurring" standard is not limited to the flooding context. As early as 1965, the Court of Claims expanded the standard's application beyond the flooding context. In *Eyherabide v. United States*, 170 Ct. Cl. 598, 345 F.2d 565 (1965), the Court of Claims evaluated a takings claim premised on a plaintiff's inability to operate his ranch property, because of adjacent military operations on the Navy's Mojave Gunnery Range. The court in *Eyherabide* cautioned that "[i]solated invasions, such as one or two floodings or sprayings do not make a taking, but repeated invasions of the same type have often been held to result in an involuntary servitude." 170 Ct. Cl. at 604, 345 F.2d at 569 (internal citations omitted). The court explained that "[w]e see no reason why combined and cumulative invasions of different types . . . should not have the same effect." *Id.* at 605, 345 F.2d at 569.

[6]This conclusion is also consistent with New Mexico law. New Mexico's trespass statute, N.M. Stat. Ann. § 30-14-1.1, states that "[i]n the event any person enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements, including buildings, structures, *trees*, shrubs or other natural features, he shall be liable to the owner," and provides for civil damages in such an event. N.M. Stat. Ann. § 30-14-

appropriated a benefit to the government at the expense of the property owner, at least by preempting the property owner's right to enjoy its property for an extended period of time, rather than merely by inflicting an injury that reduces the property's value").

Consistent with this conclusion, the Court of Federal Claims has consistently held that the United States' destruction of property without a corresponding appropriation of an interest in the property is a non-compensable tortious act. In *Poorbaugh v. United States*, 27 Fed. Cl. 628 (1993), the Court dismissed a plaintiff's claim for compensation based on the Forest Service's clearing of live trees on the plaintiff's property during the construction of a fence between the plaintiff's property and the Carson National Forest in New Mexico. In reaching its conclusion, the court in *Poorbaugh* emphasized that, while the Forest Service had damaged the plaintiff's property, it had not asserted any property interest in the trees or the plaintiff's land. *See id.* at 633-34. The court characterized the "destruction of trees . . . as a tortious invasion or conversion and not compensable in this court." *Id.* at 633.

More recently, in *Drury*, the court reached a similar conclusion. The plaintiff in *Drury* had raised various allegations similar to those Plaintiffs have invoked in this case:

> These tortious allegations include trespass, disturbing the peaceful possession of the lessee of the property, conversion, failure to notify plaintiff of defendant's acts, loss of rental income, and destruction of certain improvements on the property (in particular destroying the backstop portion of the property, damaging a building on the lot, and damaging a fence).

52 Fed. Cl. at 404. The court in *Drury* summarized that "[n]one of these allegations rises to the magnitude necessary to support a takings claim. Nor do any of plaintiff's assertions suggest that defendant has claimed a permanent or even temporary ownership interest in plaintiff's property."

---

1.1(D) (emphasis added).

*Id.*

In sum, both the Plaintiffs' pleadings and Federal Circuit precedent make it clear that the claims raised in Plaintiffs' Complaint are actions sounding in tort, not takings law. Because the Court lacks jurisdiction over claims that sound in tort, the Court should grant the United States' motion, and dismiss Plaintiffs' Complaint.

**B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM OVER WHICH RELIEF CAN BE GRANTED.**

It is a truism that to sustain a takings claim, Plaintiffs must allege facts that state a taking. As discussed above, Plaintiffs' allegations constitute a tort, not a taking, and the Court should dismiss Plaintiffs' Complaint. To the extent that the Court believes that Plaintiffs' allegations invoke takings law, however, the Court should still dismiss the Complaint, because the Plaintiffs' factual allegations do not state a takings claim for which relief may be granted.

Plaintiffs allege in their Complaint that the United States "permanently occupies Plaintiffs' property for public use," Complaint ¶ 19, at 3, presumably in an attempt to state a taking based on the United States Supreme Court's holding in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982)(holding that the permanent physical occupation of property is a taking). *See also* Complaint ¶ 22, at 3 ("Defendant's actions . . . have resulted in the government's permanent actual physical occupation of Plaintiffs' properties."). To establish a physical occupation, Plaintiffs must demonstrate that the United States destroyed their "right to possession, use, and disposal of the property." *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1353 (Fed. Cir. 2002). Plaintiffs do not, however, allege any facts that could support the finding of a taking under *Loretto*. Plaintiffs do not allege that the Forest Service remains on their land, that they are precluded from accessing the parcels from which the

trees were cut, or that they are powerless to exclude the United States and others from their lands. Moreover, Plaintiffs remain in possession of the cut trees.

Plaintiffs also assert that "[t]he government intrusion onto Plaintiffs' property was a physical invasion of Plaintiffs' property and constitutes a possessory taking." Complaint ¶ 18, at 3. Not every physical invasion, however, is a taking. *See Loretto*, 458 U.S. at 435 n.12; *Vaizburd v. United States*, 384 F.3d 1278, 1282 (Fed. Cir. 2004). Plaintiffs have not demonstrated how their allegations of an isolated trespass so substantially impaired their property as to amount to a taking. While Plaintiffs have submitted a cost appraisal for the replacement of the cut trees, Plaintiffs are still in possession of the trees, and have provided no information regarding the value of the trees before and after being cut. Likewise, while Plaintiffs indicate that they "cannot plan the future use of their land, cannot develop their land as intended when they obtained the land, nor . . . sell the land at full pre-taking value," Complaint ¶ 17, at 3, they make no factual allegations regarding the value of the land before and after the alleged taking, nor do they account for the possibility that the Forest Service's fuel-thinning activities on the property may have actually enhanced the property's value.

In sum, Plaintiffs' Complaint consists entirely of legal conclusions and lacks the factual allegations necessary to substantiate a takings action. Moreover, while Plaintiffs need not allege detailed factual allegations at this stage, both the Supreme Court and this Court have acknowledged that they must allege *some* facts that demonstrate their entitlement to relief; Plaintiffs' "obligation to provide grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65. Because Plaintiffs' Complaint does not "state a claim to

relief that is plausible on its face," *id.* at 1974, the Court should grant the United States' motion and dismiss the Complaint. *See Steward*, 80 Fed. Cl. at 543 (noting that the court must inquire whether a plaintiff's complaint meets the "plausibility standard"); *May*, 80 Fed. Cl. at 446 (explaining that a complaint must be plausible on its face).

## V. <u>CONCLUSION</u>.

Plaintiffs assert claims over which this Court does not have jurisdiction. To the extent that the Court may find that it does have jurisdiction over this action, the allegations contained in Plaintiffs' Complaint fail to state a claim for which relief may be granted. Because Plaintiffs raise claims that are not cognizable in this Court, the Court should grant the United States' motion and dismiss the Plaintiffs' Complaint.

Respectfully submitted this 18th day of April, 2008,

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

By: *<u>/s/ Mark S. Barron</u>*
MARK S. BARRON, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 663
Washington, D.C. 20044
Tel. (202) 305-0490/ Fax (202) 305-0506
mark.barron@usdoj.gov

*Attorneys for the United States*

Of Counsel:

MARY ANN JOCA, Assistant Regional Attorney
USDA Office of the General Counsel
Albuquerque, New Mexico