# In the United States Court of Federal Claims

No. 08-74 L

(Filed September 18, 2008)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| VICTOR BRISENO and PAULA BRISENO, | * | |
| | * | Takings; RCFC 12(b)(1) and |
| *Plaintiffs,* | * | Precedent Concerning |
| | * | Nonfrivolous Claims; Conversion |
| v. | * | of RCFC 12(b)(6) Motion to |
| | * | RCFC 56 Motion; Tortious |
| THE UNITED STATES, | * | Conduct; Timber Trespass. |
| | * | |
| *Defendant.* | * | |
| * * * * * * * * * * * * * * * | * | |

*William R. Keeler*, Gallup, NM, for plaintiffs.

*Mark S. Barron*, United States Department of Justice Environment and Natural Resources Division, with whom was *Ronald J. Tenpas*, Assistant Attorney General, Washington, DC, for defendant. *Mary Ann Joca*, Assistant Regional Attorney, United States Department of Agriculture Office of the General Counsel, Albuquerque, NM, of counsel.

## OPINION AND ORDER

**BUSH**, *Judge*.

The court has before it defendant's motion to dismiss plaintiffs' suit, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), or, in the alternative, under RCFC 12(b)(6). Plaintiffs seek compensation for one incident of timber trespass by the Forest Service, United States Department

of Agriculture (Forest Service).[1] Defendant's motion is denied in part, and stayed in part.

## BACKGROUND[2]

Plaintiffs Victor and Paula Briseno own property which abuts the Cibola National Forest, near Grants, New Mexico. Compl. ¶¶ 3-4, 9, 12. The Forest Service conducted thinning operations on 750 acres in the National Forest in June 2003. *Id.* ¶ 9; Def.'s Mot. Ex. 1. The thinning project had the stated goal of "reducing the risk of catastrophic fire in the wildland urban interface and improving forest health and vigor." Def.'s Mot. Ex. 1. The Forest Service crew thinned the forest by cutting down small trees, ranging from one inch to twelve inches in diameter. *Id.* Despite a recently marked boundary line between the National Forest and the Brisenos' property, the Forest Service crew cut down some trees on the Brisenos' property. Compl. ¶¶ 11-13; Def.'s Mot. Ex. 2 (plaintiffs' claim form submitted to the Forest Service, noting that "the forest service had re-surveyed the area the year before and clearly marked the bound[a]r[ies]").

Plaintiffs had not given the Forest Service permission to thin the trees on their land. Compl. ¶ 14. Approximately 139 trees were cut down on the Brisenos'

---

[1]/ A timber trespass suit typically attempts to recover compensation for merchantable timber cut and removed, without permission, from a plaintiff landowner's property. *See Lysek v. Comm'r*, 34 T.C.M. (CCH) 1267 (1975), *aff'd*, 583 F.2d 1088 (9th Cir. 1978). "A 'timber trespass' occurs when one party cuts timber on another party's property without permission. Often this occurs through inadvertence when an owner engaging in logging his own property mistakenly cuts trees across the boundary line of an adjoining property. In such instances the trespasser is legally obligated to compensate the property owner for the trees cut. Such compensation, when determined by a court, is referred to as a timber trespass award." *Id.* The term "timber trespass" is broad enough, however, to include, at least in some instances, destruction of trees whose only value is ornamental. *See In re Crow*, Bankr. No. 07-40601, 2008 WL 53908, at *1 (Bankr. W.D. Wash. Jan. 3, 2008) ("In this case, the Defendant committed timber trespass in both cutting productive timber and destroying trees and shrubs on the Plaintiff's property that the Plaintiff and the Court considered ornamental.").

[2]/ The facts recited here are taken both from the complaint and the exhibits to defendant's motion to dismiss. Defendant does not challenge plaintiffs' facts for the purposes of deciding defendant's motion, but reserves the right to contest plaintiffs' facts at a later date. Def.'s Mot. at 1 n.1. The court has examined the parties' allegations of fact for the purposes of determining its jurisdiction, but reports no findings of fact in this opinion.

property, ranging from three feet tall to thirty-seven feet tall. *Id.* ¶ 13. The unauthorized thinning on the Brisenos' land appears to have been confined to a narrow strip along the National Forest boundary, as much as eight feet wide, and affecting about three acres in all. *Id.* ¶ 13; Def.'s Mot. Ex. 2. The complaint, itself, does not allege that the Forest Service intentionally crossed the Brisenos' property line to cut trees on their land.[3] When the thinning was discovered by the Brisenos, it appears that the Forest Service cut and stacked the downed firewood next to the Brisenos' residence, per the request of the Brisenos. Def.'s Mot. Ex. 3.

About a year later, the Brisenos sought compensation from the Forest Service for the unauthorized thinning on their land. Compl. ¶ 5. Plaintiffs describe this submitted claim as a "Tort Claim." *Id.* The Brisenos requested $19,705 in compensation for "139 Ponderosa Pines cut down on approximately 3 acres." Def.'s Mot. Ex. 2. The Forest Service disagreed with the compensation requested, asserting that the Brisenos' figure "only relates to the actual replacement of the trees which were cut . . . [and] far exceeds the fair market value of the approximately three acres involved." *Id.* Ex. 3. According to the Forest Service, the stumpage value of the cut trees was $458, from which must be deducted $240 for the value of the firewood cut and stacked next to the Brisenos' residence. *Id.* The Forest Service therefore offered to settle the Brisenos' claim for $218. *Id.* The government expressed a willingness to reconsider the claim if and when the Brisenos submitted evidence showing that the thinning operation had diminished the value of the Brisenos' land. *Id.*

In 2005, plaintiffs' counsel wrote the Forest Service and stated that he "would try and get additional information for [the Forest Service] to consider regarding fair market value of the property before and after the incident in lieu of filing suit." Def.'s Mot. Ex. 4. On October 17, 2006, plaintiffs' counsel submitted an appraisal to the Forest Service which estimated the cost of replacement trees to be $22,410, but which averred that the appraiser "ha[d] not estimated any [e]ffect on market value of the property" and had not visited the property. Compl. ¶ 8 & Ex. A. No response was received from the Forest Service. *Id.* ¶ 8.

Plaintiffs filed suit in this court on February 4, 2008, alleging a "taking of

---

[3]/ In their response brief, plaintiffs argue that the facts alleged in the complaint regarding the extent of the thinning on their land and the clearly marked boundary line "support the inference of intentional conduct." Pls.' Resp. at 5.

property" and a "taking per se." Compl. at 2-3. Although the exact nature of the taking or takings is not immediately evident from the complaint, plaintiffs employ a range of descriptive terms including "uninvited trespass," "physical invasion," "possessory taking," "eminent domain," and "permanent actual physical occupation." *Id.* at 3. When alerted by defendant's motion that the complaint failed to identify "the specific property interest that [a] plaintiff contends has been taken by the United States," as required by RCFC 9(h)(7), plaintiffs clarified in their response brief that two property interests had been taken by the Forest Service. Plaintiffs seek just compensation under the Fifth Amendment of the United States Constitution for the three acre strip of their land along the boundary of the National Forest, which they allege has been taken "to create a buffer zone of thinned trees which would protect Cibola National Forest from a catastrophic fire," and for the 139 trees that were cut down by the Forest Service. Pls.' Resp. at 1. For these takings, plaintiffs now seek "damages in a value not less than $50,000." Compl. at 4.

## DISCUSSION

### I. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## II. Standard of Review for a Motion Filed under RCFC 12(b)(6)

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236. The court must inquire whether the complaint meets the "plausibility standard" recently described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007) (*Twombly*). If matters outside the pleadings are considered by the court, a motion to dismiss under RCFC 12(b)(6) must be converted to a motion for summary judgment under RCFC 56 and reviewed under that rule. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993) (stating that the standard for a motion for summary judgment applies when matters outside the pleadings are considered by a court disposing of a 12(b)(6) motion).

## III. Analysis

The court confronts two questions in deciding defendant's motion to dismiss. First, does this court have jurisdiction over the takings claims expressed in plaintiffs' complaint? Second, did the court consider and not exclude the materials defendant submitted with its RCFC 12(b)(6) motion?

### A. Jurisdiction over the Brisenos' Takings Claims

This court's subject matter jurisdiction over takings claims against the United States is provided by the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005) (finding that when a plaintiff "ha[s] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper" in this court). One test for deciding whether a purported takings claim is frivolous, announced by the United States Court of Appeals for the Federal Circuit in *Moden*, is whether the claim is "so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 1341-42. Recently, the Federal Circuit added a new gloss to the standard announced in *Moden*, and

held that a plaintiff alleging a taking must merely "ma[k]e a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under" the Fifth Amendment. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008); *see also D & D Landholdings v. United States*, 82 Fed. Cl. 329, 339 n.19 (2008) (noting that *Jan's Helicopter* and *Moden* contain different statements of the law). In *Jan's Helicopter*, an allegation that the federal government had taken the plaintiffs' property was sufficiently nonfrivolous to establish jurisdiction in this court. 525 F.3d at 1309.

Here, plaintiffs allege that the Forest Service took 139 trees, and took three acres of their land to create a wildfire buffer zone next to the National Forest. Pls.' Resp. at 1. This allegation clearly meets the *Jan's Helicopter* standard. These property owners have alleged that two of their property interests were taken by actions of the United States, and provided unchallenged facts in support of these allegations. The Brisenos are within the class of plaintiffs that might benefit from the protection of the Fifth Amendment. Whether or not they have stated a valid takings claim under the controlling precedent of this circuit is not part of the jurisdictional inquiry. *See Jan's Helicopter*, 525 F.3d at 1309 (stating that "whether appellants' takings claims will be successful on their merits[] do[es] not affect the jurisdiction of the Court of Federal Claims to consider those claims") (citing *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998)).

It is a closer question as to whether these alleged "takings" would have met the *Moden* standard for nonfrivolous takings claims, if *Jan's Helicopter* had not provided a clarifying interpretation of the language in *Moden*.[4] The Federal Circuit in *Jan's Helicopter* held that the nonfrivolous standard set forth in *Moden* should be read "as holding that the plaintiff must make a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source of law," and that, in any case, the *Moden* elucidation of this aspect of the jurisdictional inquiry was mere *dicta* that need not be followed. *Jan's Helicopter*, 525 F.3d at 1308 n.9. Because this court must attempt to reconcile the two

---

[4]/ When faced with a frivolous takings claim under the *Moden* standard, before the clarification recently provided by *Jan's Helicopter*, this court, lacking jurisdiction over what was, in essence, an inartfully pled tort claim, could have transferred the suit to a federal district court pursuant to 28 U.S.C. § 1631 (2000). Plaintiffs have requested such relief here, if jurisdiction were found to be lacking for their suit in this court. Pls.' Resp. at 8-9.

differently-stated standards, if at all possible, the court concludes that *Jan's Helicopter* must be viewed as setting forth controlling precedent and that *Jan's Helicopter* now provides the standard for determining when this court has jurisdiction over a nonfrivolous takings claim.[5] *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989) ("Where conflicting statements such as these appear in our precedent, [a later] panel is obligated to review the cases and reconcile or explain the statements, if possible."). This court has jurisdiction over plaintiffs' takings claims under the controlling standard.

Finally, the court notes that defendant asks this court to rule that it lacks jurisdiction over plaintiffs' claims, because these claims sound in tort. "The United States is not asking the Court to determine whether Plaintiffs' cause of action is frivolous or non-frivolous; rather, the United States asks the Court to determine whether Plaintiffs' claims sound in tort." Def.'s Reply at 4. *Moden* removes that question from this court's jurisdictional inquiry regarding a takings claim. 404 F.3d at 1339 n.1 ("Whether the government's actions separately give rise to a tort action is irrelevant to our disposition of this [takings] case.").

**B. Matters Outside of the Pleadings Were Considered by the Court**

Defendant argues that "Plaintiffs have not alleged that the United States has appropriated a property interest in either their land or their trees, nor alleged in what manner their own property interest was diminished, [and therefore that] the Court should dismiss Plaintiffs' Complaint for failing to state a claim upon which relief may be granted." Def.'s Reply at 7-8. Yet, the complaint states that "[t]he government has exercised its powers of eminent domain and now permanently occupies Plaintiffs' property for public use." Compl. ¶ 19. Further, plaintiffs allege that they have suffered "real injury and property devaluation." *Id.* ¶ 17.

---

[5]/ If there is direct, irreconcilable conflict between two panel decisions of the Federal Circuit, the earlier decision is controlling precedent. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict [between two panel decisions of the Federal Circuit], the precedential decision is the first."). In this instance, because the *Jan's Helicopter* panel announced that any contrary aspects of the *Moden* discussion of the "nonfrivolous" claim issue were *dicta*, this court is constrained to follow *Jan's Helicopter* as controlling precedent even though it is the later-issued circuit decision.

These claims and the facts asserted in support thereof, if no other facts were before the court, would appear to satisfy the plausibility standard announced in *Twombly*, *see* 127 S. Ct. at 1968-69, and would prevent a ruling in defendant's favor.

Defendant has, however, provided additional allegations of fact in the form of documentary exhibits which inform the court's understanding of this dispute. *See* Def.'s Mot. Exs. 1-4. If the court were permitted to now rule on the facts presented by both parties, the survival of either of plaintiffs' takings claims would be in doubt. However, because the court has considered and not excluded defendant's supporting materials, a ruling under RCFC 12(b)(6) is no longer possible. *See* RCFC 12(b)(6) ("If, on a motion asserting [a 12(b)(6)] defense . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56."); *see also Advanced Cardiovascular*, 988 F.2d at 1164 ("A movant's challenge to the sufficiency of the complaint as a matter of law, brought under Rule 12(b)(6) [and incorporating matters beyond the pleadings which have been considered by the court], is not sufficient notice that the non-movant must respond as if to a motion for summary judgment, and place material facts in dispute."). For these reasons, defendant's RCFC 12(b)(6) motion is converted to a motion for summary judgment under RCFC 56, and the court defers ruling on defendant's summary judgment motion, as explained *infra*.

## IV. Further Proceedings

Plaintiffs' claims have survived defendant's jurisdictional challenge, but other challenges may follow. Defendant has cited controlling authority describing the hurdles a plaintiff faces when alleging a taking in this court. *See Moden*, 404 F.3d at 1342 (citing *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003)). The *Ridge Line* test has its foundation in a long line of precedent, and requires that a distinction be drawn between takings claims and tort claims. *See* 346 F.3d at 1355 (noting that this court must engage in a "tort-taking inquiry"). Defendant has also cited to cases which show that various incidents of trespass may constitute tortious conduct, but do not normally indicate that a taking has occurred. *See* Def.'s Mot. at 11-12. The court is unaware of any case in this court where a plaintiff alleging facts analogous to those alleged in the subject matter has successfully brought a takings claim. Plaintiffs are encouraged to review relevant

authority as they weigh the costs of litigating their takings claims in this court.

To proceed here, plaintiffs must perforce amend their complaint, to reflect the property interests alleged to have been taken, as required by RCFC 9(h)(7), and to more clearly describe their entitlement to compensation, in terms of the takings law precedents cited herein. In response to plaintiffs' amended complaint, if any, defendant may amend its dispositive motion, originally filed as a 12(b)(6) motion but now converted to a motion for summary judgment, as permitted by RCFC 12(b)(6): "*all parties* shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56." RCFC 12(b) (emphasis added). Of course, both parties are encouraged to consider settlement options, including the court's alternative dispute resolution program, and proceedings in other fora, as appropriate.

## CONCLUSION

Defendant's motion to dismiss is denied in part, and stayed in part pending the filing, if any, of an amended complaint. Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and (6), filed April 18, 2008, is **DENIED in part**, as to the RCFC 12(b)(1) challenge to this court's jurisdiction over plaintiffs' takings claims, and **CONVERTED in part**, to a RCFC 56 motion for summary judgment, which is **STAYED** pending the filing of an amended complaint, if any; and

(2) The parties shall **CONFER** and **FILE** a **Joint Status Report**, on or before **October 29, 2008**, proposing a schedule for further proceedings in the subject matter, consistent with the directives given in this opinion.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge